## Harvey D. Parker & another *vs.* City of Boston.

An assessment for a quarter of a year, made by the water registrar under the direction of the water board of Boston, at the rate of two cents for each one hundred gallons of water used in a hotel in Boston, the daily consumption of which, as measured by a water-meter placed therein under the provisions of the city ordinance, exceeds 10,000 gallons a day, is legal; although water-meters have been put into only a portion of the hotels in Boston, and although the assessment, if made according to the provisions of the city ordinance applicable to hotels into which no water-meters have been put, would have amounted to only about one fourth as much.

Bill in equity by the proprietors of the hotel called the Parker House, in Boston, to restrain the city of Boston from cutting off the supply of Cochituate water therefrom, or other-

wise enforcing against the plaintiffs certain water rates assessed upon them.

At the hearing in this court, at April term 1860, before *Bigelow,* J., it appeared that the plaintiffs' hotel was built and fitted up with a view of using, and that it is dependent upon, the Cochituate water ; that, under the provisions of the city ordinance, the water board and registrar put into a portion of the hotels of the city, including that of the plaintiffs, a water-meter for the purpose of determining the quantity of water used therein ; that the water used in the plaintiffs' hotel exceeded ten thousand gallons a day, and the water registrar, under the direction of the water board, made an assessment thereon, for the quarter ending December 31 1859, at the rate of two cents for each one hundred gallons ; that the amount of the assessment so made was $206.19, while, if made according to the provisions of the city ordinance applicable to hotels into which no meters have been put, it would have been only $57.40 ; and that the plaintiffs were notified, on the 27th of December 1859, that, unless the amount assessed was paid within three days, the water would be cut off.

The ordinances of the city of Boston upon this subject were also introduced in evidence, and those which are material are referred to in the opinion. The case was reported upon these facts for the determination of the whole court.

*B. F. Thomas & A. A. Ranney,* for the plaintiffs. 1. The power to fix the price and rents of water is in the city council alone, and cannot be delegated to the water board or any other city officer. *St.* 1846, *c.* 167, § 11. 2. The citizen using water has a right to have the judgment and discretion of the city council upon the price to be paid. 3. If the ordinances were otherwise within the authority of the city council, they are uncertain, unequal and unreasonable, and therefore void. *Commonwealth* v. *Worcester,* 3 Pick. 473. *Vandine, Petitioner,* 6 Pick. 187. *Boston* v. *Shaw,* 1 Met. 130. *Commonwealth* v. *Stodder,* 2 Cush. 562. 4. The plaintiffs are charged several times as much under these provisions as under the prices fixed by the city council. 5. Hotel keepers using the same quantity

may, under these provisions, be charged at rates differing as one to four, at the will of the water board or water registrar. 6. Even if the ordinance is valid, this specific water rate should have been assessed by the registrar, and not by the water board. 7. It should have been assessed on the 1st of January, for the year, and not quarterly.

*J. P. Healy*, for the defendants.

MERRICK, J. By the provisions of the act for supplying the city of Boston with pure water, the commissioners to be appointed by the city council were authorized to take the waters of Long Pond and of the waters flowing into and from the same, and also of certain other described streams and ponds, and to cause the water so taken to be conveyed in aqueducts to be constructed for that purpose into, and distributed throughout, the city. And they were further authorized to regulate the use of the water, and to establish the price or rents to be paid therefor. *St.* 1846, *c.* 167, §§ 1, 2, 3. They were to continue in office for the term of three years from the time of their appointment, or until the completion of the aqueducts and other works necessary for the conveyance of the water and its distribution through the city. And upon the cessation of their office, either by the completion of those works or by lapse of the time to which it was limited, all the rights, powers and authority given to the city of Boston by the statute were thenceforward to be exercised by the city, but subject to the duties, liabilities and restrictions contained in it, in such manner and by such agents, servants and officers as the city council should, from time to time, ordain, appoint and direct. § 5.

In pursuance of the authority thus conferred, the city council, by an ordinance subsequently duly made and adopted, erected and established the Cochituate Water Board, the members of which were to be chosen annually, and to consist of three aldermen, three members of the common council and five citizens at large. By this ordinance it is declared that the Cochituate water board shall have all the powers vested in the city council by the statute before mentioned and the several acts in addition thereto, so far as the same could be delegated, but subject to

any limitations and restrictions contained in the ordinances, regulations and orders of the city council.  City Ord. § 3.

It thus appears that, unless controlled or inhibited by some limitation or restriction contained in the statutes or city ordinances, the Cochituate water board were fully empowered to fix the prices or rents for the use of water by the water takers; acting, however, in the exercise of this authority, under and in conformity to all prescribed regulations upon the subject.  This is a necessary consequence from the provisions of the statute granting this power in the first instance to the commissioners, and transferring it, upon the cessation of their offices, to the city, to be used and exercised by agents of their appointment.

But it is provided by the statute that " the city council shall from time to time regulate the price or rents for the use of the water with a view to the payment from the net income, rents and receipts therefor, not only of the semi-annual interest, but ultimately of the principal also, of the ' Boston water scrip,' so far as this same may be practicable and reasonable." § 15.  And it is contended by the complainants that, by this provision, it is made the exclusive duty of the city council to prescribe and definitively fix the price or rent to be paid by each and every water taker; and that this must be done either by a direct decision in each particular instance, or by the establishment of a general rule to be equally and uniformly applied to all persons, buildings or employments coming within some one certain of several enumerated, described and designated classes; and, consequently, that this duty cannot be transferred, and the powers necessary to be exercised in the performance of it cannot be delegated, to any other persons or parties.  It is argued, in support of this position, that such an interpretation of the statute is essential to secure equality of privilege to all the inhabitants of the city, and to protect them from the carelessness, caprice or favoritism of subordinate agents.

If there were any force in this latter suggestion, it might properly be argued as a reason for refusing to delegate authority, but it could really afford no aid in interpreting the language of a statute.  But, under the circumstances disclosed, it cannot be

regarded as an important consideration. In the provisions for the annual election of the members of the water board, for their selection partly from the officers of the city government and partly from the citizens at large, for their restriction in the exercise of their office to the orders and regulations of the city council, and in their liability to removal at its pleasure, the rights of all persons interested in their action and decisions appear to be carefully and adequately protected. Ord. § 1.

But, in examining the language of the statute and comparing its different parts, it seems very clear that it was not the intention of the legislature that the city council should, either by a special decision in each case or by the adoption of a general rule applicable to all classes and subdivisions, fix upon the exact sum to be paid in every instance by the water taker. The duty imposed upon the council is general and comprehensive, rather than minute and particular. It is to regulate, that is, to prescribe regulations in reference to the general subject of compensation for water taken by consumers from the public reservoir, rather than to act as appraisers in mere matters of detail. The declared purpose of such regulations is to provide the means for the ultimate payment and redemption of the " water scrip "; and suitable provision being made by the city council for the accomplishment of that object, and for the supply of water to individuals upon what are deemed to be reasonable terms, by the adoption of general rules for these purposes, the duty imposed upon that body in reference to rents and prices will be discharged, while all matters in detail concerning them in particular instances are left to the control and determination of agents acting under their authority and by their appointment. This is precisely what the statute concedes to the city of Boston in the provision before referred to, allowing the exercise of all the rights, powers and authority granted to it, by agents and officers from time to time ordained and appointed by the city council. Taking into consideration together the two sections of the statute, in which are found the grant of power, and the direction as to the manner and means in and by which it is to be exercised, and so interpreting the language in which they are expressed that the pro-

31 *

visions in each will harmonize with those in the other, which is according to the well established rule in the exposition of statutes, there is no difficulty in attaining to a clear perception of their meaning. 1 Kent Com. 462. In this view, it becomes at once obvious that it is made the especial duty of the city council to frame and ordain general rules and regulations respecting the rents and prices to be paid for the use of water or the privilege of taking it from the public aqueduct; while, in particular instances not otherwise definitively provided for, the exact amount of such rent or price is to be fixed and determined, under and in conformity to these general rules and regulations, by agents and officers who for that purpose are invested with all needful authority.

The passage and establishment of the ordinance for the care and management of the " water works " is a full and just compliance with the requirement that the city council shall from time to time regulate the price or rents for the use of the water. It goes into very minute directions; but, from the impossibility of foreseeing all contingencies, some cases are left to be disposed of under the general rules prescribed, upon the action and judgment of agents and officers to whom that duty is assigned.

By the 34th section of the ordinance, hotels valued for the assessment of taxes at over fifteen thousand dollars are to be charged three dollars a year for each bed for boarders and lodgers within the same. But by section forty-nine it is provided that the Cochituate water board and the proprietors of such hotels shall respectively have the right to place approved water-meters within the same; and that, when the quantity of water actually used shall be thereby measured and ascertained, the Cochituate water board may establish a water rate therefor, instead of the specific rate established by the previous section. But, to protect at once the rights of the city and of the holders of the water scrip as required by the statute, it is provided that the substituted rates of charge shall in no case be less than those directed to be charged to brewers, distillers, and for other business requiring a large supply for uses not named under specific regulations. And section forty-five provides that, when the daily

consumption exceeds ten thousand gallons, the price shall not be less than a certain specified rate for each one hundred gallons.

It appears from the report that a water-meter approved by and satisfactory to both parties was placed in the hotel of the plaintiffs, and that it was ascertained thereby that the daily consumption there exceeded ten thousand gallons. The Cochituate water board thereupon charged the plaintiffs, and caused them to be assessed by the water registrar, two cents for each one hundred gallons of water which should be taken by them; this being above the minimum rate established by the ordinance for such cases.

These proceedings were all authorized by the terms of the ordinance, and were confessedly correct as to the manner in which they were conducted. And as it has already been shown that the Cochituate water board might, as the duly constituted agents of the city, acting under and in conformity to the regulations established by the city council, lawfully fix and determine the rent or price in such case to be paid, their decision upon the subject is manifestly final and conclusive.

We do not perceive anything in the facts reported concerning this assessment, or the reasons and inducements upon which it was made, which will justify the conclusion that it was unequal, unreasonable or unjust towards the plaintiffs. They were required to pay only for the quantity of water with which they were actually supplied; and, although the charge was higher than the minimum rate at which it might have been allowed to be taken, it is not shown, nor is there in the case any evidence before the court tending to show, that the charge was at all above the real value of the supply, or beyond what, having due regard to the obligations of the city, and the rights as well as the reasonable accommodation of its other inhabitants, it was just and equitable that they should pay. But, on the contrary, it does appear that the city council, by a new ordinance established almost imultaneously with the making of this assessment, did ordain and determine what the lowest rate of charge in like cases ought to be and should be thereafter; and that the assessment upon the plaintiffs corresponded exactly with that established mini mum. City Ord. Nov. 15, 1859.

It is indeed urged in their behalf that the particular part of the ordinance under which the charge against them for the use of water was made is invalid, because the water board, not being limited and restrained in the exercise of their authority within any fixed and definite rate, have the power to subject individuals to unreasonable and excessive charges. But it is to be considered that the members of the board act in an official capacity, and that they are responsible to and their acts may be controlled by the city council in the adoption of new regulations and the enactment of new ordinances, whenever it shall appear that there is occasion for such interposition. In this responsibility on the one side and supervision on the other, there seems to be a reasonable degree of security that the duties of the office will be performed in good faith, and with prudence and discretion, and a just respect for the rights of all parties interested in their action. But without relying upon these general considerations, we think it is a sufficient answer to the objection in the present case, that the plaintiffs have no real and just ground of complaint, since the rate of payment to which they by the action of the water board have been subjected is the most favorable to which the city council by their most recent ordinance have determined that any person in the like case is entitled.

As to the suggested inequality resulting from the omission to place water-meters in all the buildings in the city occupied as hotels when they were put into the house of the plaintiffs, it cannot, if there is ground of complaint on that account, of which we have no evidence in the report, affect the question of the validity of the ordinance or of the proceedings of the water board in this particular instance under it. In the absence of any proof on one side, or of explanations on the other, as to the reasons or motives which induced a discrimination, it may with propriety be presumed that they were such as fairly to vindicate and justify their proceedings. Certainly nothing like partiality, prejudice or favoritism is in this or in any other instance shown or pretended.

The charge for the water was fixed and determined, as the ordinance requires that it should be, by the water board, and not

by the water registrar. The authority is expressly given to them. Ord. § 49. The latter in making, or rather, in recording, the assessment, can act only under their direction.

The ordinance does not require that all assessments or charges for the use of water shall be made on the first or in the month of January, and payable annually; but only that when so made they shall be payable in advance.

The conclusion from all these considerations is, that upon a proper interpretation of the provisions of the statutes and ordinances bearing upon the subject, none of the objections urged by the plaintiffs against the proceedings of the water board in fixing the price or rent to be paid for water taken by them can be sustained. And, as they thus fail to show that they have any just cause of complaint, or that they are entitled to the relief prayed for, the defendants ought to have judgment; and the bill must accordingly be dismissed.